— Court —

# 3020182

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**SOUTH BEND DIVISION**

-FILED-

JUN 21 2018

At _____ M
ROBERT N. TRGOVICH, Clerk
U.S. DISTRICT COURT
NORTHERN DISTRICT OF INDIANA

**STEPHEN E. TAGHON, JR. et al,**

**v.**

CASE NO. 3:18cv476

**LIEUTENANT WILLLIAM REDMAN, et al.**

## CIVIL RIGHTS COMPLAINT

This is a Civil Rights Complaint, pursuant to Fed. R. Civ. P., brought forth by American Plaintiffs against the Defendants who violated their United States Constitutional Rights.

### I. JURISDICTION AND VENUE

1. This is Plaintiffs' civil action authorized by 42 U.S.C. section 1983 to redress the deprivation, under color of state law, of rights secured by the Constitution on the United States. The Court has jurisdiction under 28 U.S.C. section 1331 and 1343 (a)(3). Plaintiffs' seek declaratory relief pursuant to 28 U.S.C. section 2201 and 2202. Plaintiffs' claims for injunctive relief are authorized by 28 U.S.C. 2283 and 2284, and Rule 65 of the Federal Rules of Civil Procedures.

2. The Court has supplemental jurisdiction over Plaintiffs' state law claims under 28 U.S.C. section 1367.

3. The Northern District of Indiana, South Bend Division, is an appropriate venue under 28 U.S.C section 1391 (b)(2) because it is where the events giving rise to these claims occurred.

### II. PLAINTIFFS

4. Number of Plaintiffs': **3**

5. Plaintiffs' addresses:

**STEPHEN E. TAGHON, JR**
19630 Dubois Avenue
South Bend, IN 46637

**PAULA MARIE TAGHON**
815 W. Douglas Rd., Lot 7
Mishawaka, IN 46545

**KIRSTEN KRAUSS**
4512 Linden Avenue
South Bend, IN 46619

6. Addresses of events:

   19630 DUBOIS AVENUE, SOUTH BEND, IN 46637

   MEMORIAL HOSPITAL, 534 N. MICHIGAN ST. SOUTH BEND, IN 46601

   ST. JOSEPH COUNTY JAIL, 401 W. SAMPLE ST. SOUTH BEND, IN 46601

   INDIANA STATE DEPT. OF TOXICOLOGY, 550 WEST 16th ST. INDPLS. IN 46202

   1300 W. WASHINGTON ST., SOUTH BEND, IN 46601

7. Date of event(s):

   JULY 4, 2016 and AUGUST 4, 2016

## III. DEFENDANTS

8. Number of Defendants: **14**

9. Defendants:

   **WILLIAM REDMAN - (LIEUTENANT)**
   St. Joseph County Sheriff's Department
   401 West Sample Street
   South Bend, IN 46601

   **TERRY BECK - (CORPORAL)**
   St. Joseph County Sheriff's Department
   401 West Sample Street
   South Bend, IN 46601

   **DAVID HOLCOMB - (PATROLMAN)**
   St. Joseph County Sheriff's Department
   401 West Sample Street
   South Bend, IN 46601

   **KYLE LABERE - (PATROLMAN)**
   St. Joseph County Sheriff's Department
   401 West Sample Street
   South Bend, IN 46601

**MR. JOZAITES - (SERGEANT)**
St. Joseph County Sheriff's Department
401 West Sample Street
South Bend, IN 46601

**KYLE STOPCZYNSKI - (CORPORAL)**
St. Joseph County Sheriff's Department
401 West Sample Street
South Bend, IN 46601

**MICHAEL GRZEGOREK - (SHERIFF)**
St. Joseph County Sheriff's Department
401 West Sample Street
South Bend, IN 46601

**ST JOSEPH COUNTY SHERIFF'S DEPARTMENT**
St. Joseph County Sheriff's Department
401 West Sample Street
South Bend, IN 46601

**JASON PATURLASKI - (PHLEBOTOMIST)**
534 North Michigan Street
South Bend, IN 46601

**MEMORIAL HOSPITAL**
534 North Michigan Street
South Bend, IN 46601

**NMS LABS - (MEDICAL LABORATORY)**
3701 Welsh Road
PO Box 433A
Willow Grove, PA 19090-0437

**SHEILA ARNOLD - (STATE TOXICOLOGIST)**
Indiana State Department of Toxicology
550 West 16th Street
Indianapolis, IN 46202

**INDIANA STATE DEPARTMENT OF TOXICOLOGY**
550 West 16th Street
Indianapolis, IN 46202

**AXON ENTERPRISE, INC. - (TASER MANUFACTURE, FORMERLY: TASER INTERNATIONAL, INC.)**
7860 E. McClain Drive
Scottsdale, AZ 85260

## IV. STATEMENT OF THE FACTS

10. On July 4th, 2016, Plaintiff Stephen drove his vehicle beside parked patrolmen St. Joseph County Sheriff Deputy Terry Beck's police cruiser, while with his wife Plaintiff Paula as his passenger. Stephen then rolled down his front passenger window to report serious violent crime intel to Deputy Beck. Deputy Terry Beck was slow to roll his passenger window down due to what appeared to be of him taking a nap in his police cruiser when Stephen had pulled beside him so, Stephen honked his horn a few times until gaining his attention after him being alerted awoke by the horn. When Stephen acquired Deputy Terry Beck's attention, and he had subsequently rolled his passenger window down, Stephen then reported to him that there was a violent black male named Don Campbell who lived on Miner Street in South Bend and was dealing heroin, raping young women and, that he was subjecting young women to indebted sexual servitude through heroin sales. After Stephen made his report to Deputy Beck, Stephen then asked him if he could follow him to the location on Miner Street so that he could show him where police intervention was necessary for the prevention of additional women from being seriously injured by the violent sexual predator reported to Deputy Beck by Stephen.

Deputy Beck struggled to intelligibly comprehend what Stephen had reported to him due to the deficient mental state of awareness Deputy Beck was in after being abruptly awoke from sleeping in his police cruiser and him being unexpectedly discovered by Stephen to be derelict of his duty when he was supposed to be on duty at the time. Due to Deputy Beck's inability to intelligibly comprehend Stephen and combined with Stephen's respect for Deputy Beck in consideration to the intrusion caused upon him for which his angry facial expressions and irritated demeanor toward Stephen that he had outwardly reflected, Stephen told him to never mind and apologized to him. Stephen then drove peacefully away in a respectful and professional mannerism to a nearby gas station; thus, rightfully ending the impromptu encounter he himself had freely initiated and had properly ended while being his free will right to do so without fear of reprisal; except, Deputy Beck pursued Stephen in disregard for the fact that he had told him to never mind and he had acknowledged Stephen's request before Stephen drove away. Stephen drove away nearby to beside a gas pump to get gas at the gas station, and in doing so, had gotten out of his vehicle at the gas pump after parking as Deputy Beck had turned on his police lights simultaneously.

Confused as to why Deputy Beck didn't adhere to their mutually understood termination of contact and communication between them, Stephen asked to speak to him with his hands out in front of him and palms up, in a friendly gesture minded manner of approach in respect for the law enforcement officer but instead, Deputy Beck violently drew his firearm on unarmed Stephen and started holding it sideways with a onehanded grip like a violent gangster thug imitator. While doing that, Deputy Beck then degrading and humiliatingly began screaming indignantly at Stephen while poking, pointing, shaking and jerking his firearm in a back and forth motion toward Stephen uncontrollably without professional restraint, concern or regard for the lethal power force weapon that he was recklessly wielding at Stephen and in the direction of his pregnant wife savagely and, with no consideration whatsoever for the value of their lives that he put in danger, nor for the life-threatening fear he instilled upon Stephen from the fear for his unborn child, wife or himself being senselessly murdered by a vicious and overzealous violent cop. Then Stephen got back into his vehicle and drove home away from Deputy Beck. A short police pursuit ensued until Stephen parked his vehicle in their family's driveway and surrendered without resistance.

11. After parking the vehicle and surrendering without resistance, Stephen's wife Plaintiff Paula, who was noticeably 7 ½ months pregnant at the time, opened the front passenger car door first with her hands out and up in full compliance with all shouting police commands. St. Joseph County Sheriff's Deputy Kyle Lebere then viciously grabbed Paula by her shirt and swung her around by her shirt, which exposed her bare belly, and then he violently belly-slammed Paula by using the momentum of the force that he had gained from swinging her around by her shirt excessively. Deputy Lebere then jumped on her back violently and viciously struck her with a lower back knee strike. Stephen witnessed this happen to Paula and it compelled him to yell toward Deputy Lebere as loud as he could respectfully, over the sound of the wailing police sirens, from the driver seat of the vehicle where he was still sitting, about 15ft. away from them, and shouted, "Hey, She's pregnant." In retaliation for Stephen's pregnancy awareness concern notification statement speech made to Deputy Lebere in attempt to protect Paula and their baby from further injury, Deputy Lebere struck Paula in her lower back again cruel and hatefully with another vicious knee strike maliciously.

12. Deputy Lebere's excessive use of force attack implemented against Paula in retaliation for Stephen's first pregnancy awareness concern notification statement speech made to him, then instinctively compelled Stephen to yell over to Deputy Lebere a second time, as loud and assertive as he possibly could over the sound of the wailing police sirens respectfully, in a second attempt at ensuring Deputy Lebere heard him say that Paula was pregnant, in hope of protecting Paula and their baby from any further injuries, whereby he shouted, "Hey, she's pregnant," which was from the same exact position Stephen had done so the first time inside of the vehicle and out the open passenger car door. In further retaliation for Stephen's pregnancy awareness concern notification speech statements made the second time from inside of the vehicle to Deputy Lebere, after St. Joseph County Sheriff's Deputies William Redman and David Holcomb had kneeled in unison together within inner range of the open passenger car door's outer edge when Stephen had made his second pregnancy awareness concern notification statement then for them all to hear, Deputy Lebere struck Paula in the lower back maliciously with a sinister and antagonistically evil grin on his face that was morbid and sadistic.

13. Deputy Lebere struck Paula again with the second lower back knee strike for two reasons, first in retaliation for Stephen's freely expressed speech toward protecting her and their baby from any additional injury caused to either of them by him and; while at the same time, Deputy Lebere only did so against Paula the second time with the intent of harming Stephen to intentionally provoke and antagonize Stephen into continuing to make more shouting complaints toward him, so that Stephen would continue to do so in front of Deputy Redman and Holcomb as and after they had kneeled within the inner range of the open passenger car door in the process of them taking aim with their laser sighted Advance Taser M26 taser guns at Stephen's face while listening to him complain as they kneeled into position. Deputy Lebere devised a retaliatory plan for causing Stephen to purport what would cause him to incorrectly appear as if he was and were; to then be considered to be, a hostile target in the minds of Deputy Redman and Deputy Holcomb, in which his plan was strategically implemented in the heat of the moment once the opportunity presented itself to him; due to, his comprehension of the first response he received from Stephen after he had used excessive force against Paula the first time in retaliation for Stephen's first pregnancy awareness notification concern statement response reaction that he had made known to him so that they would use the greatest amount of force humanly possible against Stephen and, in which it also became another form of their own retaliation through the unnecessary and excessive amount of force that Deputy Redman and Deputy Holcomb used against Stephen for his same continued speech.

14. Deputy Lebere's plan achieved its desired effects and inflicted serious bodily injury upon Stephen by nearly causing his death due to their ignorance from being deceived and their own hatred for thinking that Stephen was a hostile target when, in all truth he was not and was only continually expressing his pregnancy awareness concern notification statements instinctively from a protectors perspective mentality's type of mental capacity to them in hope of them finally being able to comprehend the magnitude of the dangers in which they hatefully continued to create intentionally as derivatives of their cruel, sadistic and malicious mentalities, behaviors and uncalled for aggravated assaults resulting in serious bodily injury as a result of their own lack of experience, knowledge and wisdom against being able to effectively identify, analyze, examine, process and interpret ongoing information or data for individual event basis variances, in which they do not possess the expert level critical thinking skills necessary for being able to comprehend these tactical concepts professionally.

15. Stephen continued making further pregnancy speech awareness concern statements in the form of serious complaints directed to Deputy Redman and Holcomb regarding Deputy Lebere's excessive use of force attack made against Paula in retaliation for his pregnancy awareness concern statement speech made to him and in retaliation for the continued complaints Stephen made against Deputy Lebere, Deputy Redman and Holcomb then shot Stephen in the face with their Advanced Taser M26 laser sighted taser guns, less than 10ft. away from Stephen, through the open passenger car door while kneeling on one knee each and aiming from each of their own shoulder levels at a dead even height with Stephen's face, while Stephen was sitting in the driver seat and his head and face were completely parallel with their shoulder level aims intended for Stephen's face, and as they each used both of their own hands to grip and stabilize each of their own weapons to sadistically ensure the accuracy of their shot placement aimed at Stephen's targeted face.

16. Miraculously, Stephen perceived the red Advanced Taser M26 laser sight light reflect a glare around the inside of his right eye socket that gained his attention toward Deputy Redman and Deputy Holcomb aiming head level at Stephen's face, which then enabled him to briefly see a silver wavy string like projectile, within blinks of his eyes time lapse, propelling toward his right eyeball. The taser gun laser sight reflective glare effect anomaly aided Stephen to quickly turn his face away (ie LEFT) from the incoming projectiles life threatening danger, instinctively, as best as possible to defend against receiving a direct puncture wound to his faces right eyeball and the coinciding electrocution thet would've been produced by it after being pierced with the taser barb while pulsating through his right eye ball, facial nervous system and brain simultaneously. Had Stephen not seen the wavy silver string like projectile when he did, or reacted quickly enough, the taser barb would have pierced his right eyeball and resulted in its permanent loss for the rest of his life undeservingly. The Advance Taser M26 taser barbs shot at Stephen by Deputy Redman and Deputy Holcomb pierced a nerve through Stephen's right ear traggas and struck him in the neck, shoulder and chest near to his heart simultaneously.

17. Horrendous pain was immediately inflicted upon Stephen by Deputy Redman and Deputy Holcomb's Advanced M26 taser guns excessive use of force administration and combined with the God-Fearing effects from electrocution that he felt pulsate uncontrollably inside of his head and skull was terrifying and then immediately effective at incapacitating Stephen. After the taser barbs pierced Stephen's nerve through his right ear it sounded like a crack of thunder and lightning had exploded inside of his head and skull. Stephen felt a horrific electrical current pulsate into his neck, throat, right ear drum, right eye ball and socket and throughout his brain. The last thing Stephen consciously remembers thinking prior to suffering unconsciousness from the incapacitation was, whether or not the agonizing taser electrocution pain that he was being subjected to his heart into the neck up of his entire face, head and brain is if what it had felt like for patients who were being experimented on with electro shock therapy in mental health institutions when that kind of technology was first being developed by medical researchers for medical procedure treatment options in psychiatry and thinking that it was going to kill him, until succumbing to absolute defenselessness of himself, physical and mental unconsciousness and mental retardation from the Advanced Taser M26's electrical cycles incapacitating effects near death experience and permanent injury result when administered to the heart, face and head of a human being. Stephen was instantly subdued and rendered entirely defenseless upon his immediate incapacitation from the Advanced M26 Taser Guns initial electrical cycles administrations. The secondary taser barb which completed the circuit with the one in his head struck Stephen in his chest near to his heart. This was crucifying painful and the most extreme form of excruciating pain in the form of torture Stephen has ever experienced in his life.. Stephen was shot with multiple taser cartridges at the exact same time and in a very rare occurrence each Advanced Taser M26 taser gun completed an enhanced circuit simultaneously which then doubled the amount of agonizing electrical current use of force pain that was applied to him excessively.

18. While Stephen was already incapacitated and no longer consciously able to physically or mentally function like a human being is capable of cognitively, Deputy Redman and Deputy Holcomb continued to maliciously cycle and recycle their Advanced Taser M26 taser guns excessively for 25-45seconds (According to MVR taser cycle time lapse data) after they had recognized and acknowledged Stephen's immediate incapacitation from the same positions where they had aimed, fired and struck Stephen in his face in retaliation for Stephen's speech toward Deputy Lebere and, in doing so they shot him in the face from less than 10ft. away while possessing marksman level accuracy capabilities and skillsets in addition to their laser sighted Advanced Taser M26 taser guns. The result of Defendants Deputy William Redman and Deputy David Holcomb's excessive amount of force used against Stephen caused him to suffer from the unnecessary and wanton infliction of serious pain and injuries which caused a traumatic brain injury, mental retardation and for Stephen to asphyxiate nearly to his death cruelly. Deputy Redman and Deputy Holcomb's retaliatory excessive use of force actions that they applied against Stephen sadistic and maliciously were hateful, cruel and uncalled for.

19. Stephen's brother-in-law Michael Johnson, Jr. had to hand signal speech to Sgt. Joaites, as he witnessed the Defendants killing Stephen from being tasered excessively, from behind the glass storm dorm of the house where he could see from more than 20ft. away and inside of the vehicles front windshield where Stephen was helplessly being tasered to death excessively. In retaliation for Michael's speech that helped to save Stephen's life, Sgt. Joaites had Michael illegally seized and detained from inside of his home at gunpoint by Deputy Stopczynski.

20. When Deputy Redman and Deputy Holcomb were finally ordered twice by Deputy Joaites to stop tasering Stephen before they complied with his order after a witness on scene began complaining that they were killing him, (MVR) Deputy Beck opened the front driver side car door and immediately yelled twice that Stephen was having a seizure. After Deputy Beck made this acknowledgement to Deputy Redman, Deputy Holcomb and Deputy Joaites; Deputy Beck and Deputy Holcomb then violently and maliciously began ripping Stephen out of the vehicle in reckless disregard for his medical emergency and cruelly dropped him on the back of his head upon the concrete from 3 – 4 feet high. Defendants were in a total panic after they all comprehended what Deputy Redman and Deputy Holcomb had exactly done to Stephen that was far beyond any justifiable Advance Taser M26 use of force administration.

21. Deputies: Redman, Holcomb, Beck, Stopczysnki, Joaites, and Lebere then immediately began trying to cover up the excessive force injuries by attempting to remove taser barbs from Stephen without EMS on scene or medical assistance. These Defendant Deputies are on video pinning Stephen down and further torturing him excessively while trying to remove the taser barbs to no avail., and while the other Defendant Deputies begin nonchalantly blocking the dash cam video footage recording sightline of view as best as they possibly could without looking more obvious than they do. Deputy Joaites communicates verbally and hand signals to another Deputy behind the recording viewpoint sight and is clearly speaking verbally and physically to block the camera while they torture Stephen and he suffers further. Deputy Redman is seen on camera making a blatant and obvious hand gesture of a yank and pull motion in a cruel, hateful and malicious way to suggest tearing taser barbs from Stephen that had pierced a nerve leading to his brain. The Deputy Defendants are also on video recording coercing EMS Responders to rip the taser barbs out of Stephen while they again start trying o block the dash cam video recording line of sight, in attempt to prevent Stephen from being seen suffering, but they were unsuccessful at doing so and instead were recorded interfering with an investigation and tampering with evidence. Although Deputy Beck can be seen on video recording going to his cruiser and shutting the audio recording portion of the MVR before the anything or anyone was cleared for departure or transport. Defendants then can be seen on dashcam video recordings laughing, snickering and wiping smiles off their faces for what they had done to Stephen.

22. Defendants William Redman, Terry Beck and David Holcomb then publicly shamed, humiliated and degraded Stephen to the news media, public and court system by providing a false report that Stephen had suffered a heroin overdose, when he did not, in conspiracy to cover up the excessive amount of force that they had maliciously used against Stephen. Defendants state in their reports that Stephen tested positive for heroin after a blood draw was administered at Memorial Hospital, but those same reports also state that the results for that same exact blood draw was pending findings for narcotics, which did not become available until months later, and was negative for their false report that Stephen had suffered a heroin overdose. Stephen's blood draw lab results were negative for the alleged heroin that the Defendant had knowingly reported falsely of him having in his system.

23. Stephen was then ambulated to the Memorial Hospital ER to receive emergency medical care and have the taser barb in his face surgically removed. While in the ER Stephen had regained cognitive awareness and again reported to Deputy Redman and David Holcomb that there was a heroin dealing rapist named Don Campbell living on Miner Street in South Bend who was raping young women and subjecting young women to indebted sexual servitude from the heroin through heroin sales and that he needed to be stopped before there was another victim. Defendants laughed at Stephen and told him that it didn't matter because he was going to jail.

24. Deputy Redman and Deputy Holcomb then forced Stephen into a blood draw consent in further conspiracy to aid in covering up the fact that they had excessively tasered Stephen in the head, while hoping that he did have heroin in his system. Stephen refused the blood draw consent entirely, per his right to do so, by telling them, "No." In retaliation for Stephen telling them, "No," and his free speech right to do so without fear of reprisal, Deputy Holcomb then choked Stephen, per Deputy Redman's order of him to do so to Stephen, while Stephen was handcuffed to the hospital bed and into submission. Stephen tried to yell for help to no avail. and signed his name as, "Forced to Sign," on the first form so that Deputy Holcomb would stop choking him and refused to sign the second form entirely. Therefore, Stephen had completely refused consent to any blood draw whatsoever.

25. Memorial Hospital Phlebotomist Jason Paturlaski then spoke with Deputy Redman and Deputy Holcomb briefly, inspected the blood draw consent forms that they presented to him, and then brought his blood drawing equipment next to Stephen. Stephen told Phlebotomist Paturlaski that the did not have his consent to draw his blood from his body and do not take his blood from him. Phlebotomist Paturlaski told Stephen that he had no choice and there was nothing he could do to stop it. Stephen's private blood property was then forcibly taken from him without his consent, court order or a warrant, and Stephen could not physically resist to stop or prevent it because he was defenselessly handcuffed to the hospital bed. Stephen had even told Phlebotomist Paturlaski that he had signed, "Forced to Sign," on the first form and refused to sign the second form entirely to no avail.

26. The taser barb had struck a nerve when it pierced Stephen's right ear tragus. Stephen underwent neurological and radiology examination before the ER doctor painfully removed the taser barb by ripping it out, after being told by Deputy Redman and Deputy Holcomb to do so while they sadistically laughed at Stephen when he was put through more agonizing pain and tortured further due to their hateful, cruel and uncalled for causes and effects. Defendant William Redman then falsified his St. Joseph County Taser Injury Report Submission to reflect Stephen's ER visit as having a taser barb removed from his lower back falsely and is an intentionally falsified document, instead of his face, in further conspiracy to cover up the fact that they had shot him in the face with their laser sighted Advanced Taser M26 taser guns and then he submitted it as evidence to the St. Joseph County Prosecutor's Office against Stephen as a matter of public record in Cause No. 71D01-1607-F6-000596.

27. After the Defendants transported Stephen to the St. Joseph County Jail they illegally shared and allowed jail deputies to view the near fatal taser induced traumatic brain injury, cranial seizure and asphyxiation dash cam video recording footage of Stephen before turning it into evidence and submitting to the prosecutor's office. Two of the known jail deputies who viewed the video recordings were St. Joseph County Jail Deputies Wilke and Tiding, who they and other jail deputies laughed and humiliated Stephen for his traumatic serious injury experience. In addition to the false heroin overdose report claim that Defendants publicly made against Stephen, the jail deputies photographed a sorrowful, degrading, shameful and humiliating derogatory jail mug shot to coincide with aiding Defendant's frivolous news story ran against Stephen due to their morbid sense of humor and multi-agency conspiracy to aid in covering up the truth. The St. Joseph County Jail even altered Stephen's mugshots to reflect a different day of arrest after Jail Deputy Miss Coleman shared Stephen's legal work with jail administrative staff while making his legal copies for him. Original mug shot photos released in comparison to presently available mug shot photos establish an illegal alteration to the public record, and this was done in further retaliation against Stephen by jail staff for other civil rights lawsuits brought forth by Stephen against the St. Joseph County Jail.

28. Defendant's false reports submitted to the St. Joseph County Superior Court System and Prosecutor's Office against Stephen resulted in him being issued an excessive $5,000.00 cash bond for a minor Level 6 Felony Fleeing, which contributed to 7 ½ month pregnant Paula's displacement and to her becoming homeless because Stephen could not provide for her. Judge Jane Woodward Miller was deceived by the Defendant's false reports made to the prosecutor's office and then submitted to her, which caused her to order the excessive $5,000.00 cash bond. No matter how much Stephen begged and pleaded with Judge Elizabeth Caldwell Hurley after the excessive bond had been issued she refused to afford Stephen a bond reduction so that he could take care of Paula and be present for the birth of his first-born child. Sadly, Stephen was deprived of his sacred right to bear witness to the birth of his first-born child with no compassion from the St. Joseph County Justice System whatsoever.

29. Eventually, Stephen's non-consented and forced private blood test property lab results were illegally transmitted using the same denial of consent lab draw forms from Defendant Memorial Hospital to Defendant NMS Labs and then, from Defendant NMS Labs to Defendant Indiana State Department of Toxicology and then from there to the St. Joseph County Superior Court Judge Elizabeth Caldwell Hurley and Deputy Prosecuting Attorney Micah Cox by Defendant Indiana State Department of Toxicology and Toxicologist Sheila Arnold without Stephen's consent, warrant or a court order. Although Stephen's confidential medical information privacy rights expectations, also known as HIPPA, were completely violated by all these Defendants, Stephen's private blood test property lab results were NEGATIVE for illegal narcotics and NEGATIVE FOR HEROIN.

30. After all the St. Joseph County Sheriff Deputy's Defendants failures to act upon the criminal information that Stephen had reported to them about Don Campbell, on August 4 2016, female victim Plaintiff Kirsten Krauss was raped and subjected to indebted sexual servitude through heroin sales by Don Campbell at his residence. Kirsten was subjected to and suffered criminal confinement by way of unknown heroin injection induced unconsciousness so that Don Campbell could at will rape and prostitute her against her own will through the nonconsensual sexual transactions (i.e. Date Rape Sexual Slavery) to an unknown amount of male assailant customers for his own personal gains and financial profits. Thus, the term, "Indebted sexual servitude from heroin sales," is defined by horrific worst-case scenario explanation. Kirsten's experience is an atrocity.

31. Plaintiff Kirsten Krauss suffered an atrocious amount of rape from unknowingly and unwillingly being injected with heroin, while she was already unconscious from each previously administered heroin dosages induced effects and was repeatedly kept in this defenseless state of unawareness until she was finally able to escape from Don Campbell to report the heinous crimes that had taken place against her to the local authorities. Don Campbell is the very criminal Stephen reported the Defendants to no avail., and their failures allowed for the unnecessary and preventable crimes to happen against her. This is also a result of the Defendants being too preoccupied mentally at the time with covering up what they had done to Stephen, which then became the Defendants own felony level crime commissions once they falsified documents and reports that they knowingly and intentionally submitted against Stephen for his malicious prosecution. This is an absolute atrocity.

32. Defendants false reports made to local news agencies caused the South Bend Tribune, abc57 News South Bend, WNDU News Center 16 South Bend, WSBT News22 South Bend and other local Michiana Area news media sources to report false and wrongful public reports against Stephen, in which being that he had ran from police and suffered a heroin overdose, while they publicly displayed the degrading and humiliating sorrowful mug shot of him shamefully. The news agencies made these false reports without ever investigating the validity of the allegations made against Stephen.

33. Plaintiff Stephen suffered serious injuries, and he has permanent cognitive impairment and dysfunction, including but not limited to: Memory Loss, Episodic Impairment, Memory Retention Complications, Severe Comprehension Complications, Depression, Anxiety, Emotional Instability, PTSD, Traumatic Brain Injury, Mental Retardation and Temporary Blindness, Migraine Headaches, Insomnia, Vertigo, and Light Blindness. Stephen permanently lost two thirds of the hearing in his right ear due to ear drum damage with a permanent ringing that fluctuates between his right and left ears and has black spots in the vision of his right eye. Stephen had never experienced a seizure in his life until being tasered and now suffers from reoccurring seizures. Stephen suffered an undetermined and permanent amount of brain and nerve damage. Some days Stephen believes that Defendants murdered him on July 4, 2016 and that he is living out his life in an alternate realm of existence through surviving the excessive force Advanced Taser M26 taser gun usages. Stephen was caused to miss the birth of his first-born child and the psychological trauma he suffered can never be undone nor forgotten.

34. Plaintiff Paula suffered serious injuries, and she suffered severe abdominal bruising where the baby was because she was carrying low. Paula suffered vaginal bleeding and a lower and upper back injury to her spine that causes her to lose feeling in her hands. After giving birth, and since giving birth, Paula has continued to have permanent amounts of excessive bleeding when not menstruating. Paula continues to conception complications since suffering the belly slamming trauma to her lower abdomen and has continued to miscarry. Paula was preyed upon and taken advantage of when she was still pregnant while Stephen remained in jail and was subjected to awful conditions that she had to survive due to her homelessness. Paula was left in the streets on her own while pregnant to fend for herself due to Defendants false reports that resulted in Plaintiff Stephen's excessive $5,000.00 cash bond, and she suffered serious mental, emotional, and physical injuries, including, but not limited to: Post-Partum-Depression, Severe depression, Fear, Anxiety, Hopelessness, Despair, Grief, Sorrow, Worry, and other serious psychological traumas. The severe mental exhaustion caused Paula to experience an ongoing nervous breakdown and mid-life crisis. Paula witnessed Stephen get shot in the head and tasered excessively through the open passenger car door, while she screamed his name and cried, as Defendants maliciously tortured Stephen cruel and sadistically with their taser guns excessively. The serious injuries Paula witnessed her husband suffer are forever engrained in her memory and she now suffers from PTSD. The psychological trauma Paula suffered can never be forgotten nor undone.

35. Plaintiff Kirsten suffered forever lasting serious mental, emotional and physical injuries, including, but not limited to: Social Anxiety, Anxiety, Depression, PTSD, Low Self-Esteem, Fear, Dread, and many other physical and psychological personal problems. Kirsten was seriously injured from being sexually assaulted an unknown exact amount of times by an unknown exact number of assailants. The psychological trauma Kirsten suffered can never be undone nor forgotten.

## V. LEGAL CLAIMS

36. Plaintiffs reallege and incorporate herein by reference and mention thereof paragraphs 1 – 35.

37. The unnecessary and violent belly slamming with lower back knee strike against 7 ½ month pregnant Plaintiff Paula by Defendant Kyle Lebere while she was complying with all police commands was a malicious amount of excessive force that was cruel, hateful and uncalled for; which violated Plaintiff Paula's Fourteenth Amendment Right to the United States Constitution.

38. The second unnecessary and violent lower back knee strike against 7 ½ month pregnant Plaintiff Paula by Defendant Kyle Lebere in retaliation for Plaintiff Stephen's speech to him regarding the fact that she was pregnant when she was already secured by him and he was on top of her defenseless body while she was in the prone position was a malicious amount of excessive force that was cruel, hateful and uncalled for; which violated Plaintiff Paula's First and Fourteenth Amendment Rights to the United States Constitution.

39. Defendant Kyle Lebere violated Plaintiff Stephen's First Amendment Right to the United States Constitution by striking and injuring Plaintiff Paula with a second lower back knee strike in retaliation for Plaintiff Stephen's making his second pregnancy awareness notification concern statement to him about Plaintiff Paula being pregnant.

40. Defendants William Redman and David Holcomb violated Plaintiff Stephen's First and Fourteenth Amendment Rights to the United States Constitution by shooting Plaintiff Stephen in the face with their laser sighted Advanced M26 taser guns at a distance of less than ten feet away from him maliciously with cruel, hateful and uncalled for sadistic excessive force in retaliation for Plaintiff Stephen stating to Defendant Kyle Lebere that Plaintiff Paula was pregnant and continuing to complain to them that she was pregnant.

41. Defendants William Redman and David Holcomb violated Plaintiff Stephen's Eighth/Fourteenth Amendment Rights to the United States Constitution by shooting Plaintiff Stephen in the face with their laser sighted Advanced Taser M26 taser guns at a distance of less than ten feet away from him and continuing to maliciously cycle and recycle their taser gun weapons electrical currents hatefully and cruelly after Plaintiff Stephen's incapacitation and him suffering a near fatal taser induced traumatic brain injury that was a cruel and sadistic use of excessive force and was uncalled for.

42. Defendants Terry Beck and David Holcomb violated Plaintiff Stephen's Eighth/Fourteenth Amendment Right to the United States Constitution by maliciously ripping Plaintiff Stephen out of his vehicle after acknowledging on video that he was having a seizure and then dropping him from three to four feet high on the back of his head onto the uneven concrete surface, which was cruel, hateful and an uncalled for excessive amount of force used against Plaintiff Stephen.

43. Defendants William Redman, Terry Beck, David Holcomb, Kyle Stopczynski, Kyle Lebere, and Mr. Joaites violated Plaintiff Stephen's Eighth/Fourteenth Amendment Rights to the United States Constitution by holding Plaintiff Stephen down when he was in agonizing pain and then tortured him while attempting to pull out the taser barb and tried to block the camera recording line of sight view that caught them on camera doing so, without EMS arrival, that they had shot Stephen in the face with and this was cruel, hateful and an uncalled for excessive amount of force that they continued to use against Plaintiff Stephen, and then continuing to torture Plaintiff Stephen further by compelling EMS upon arrival to rip the taser barb out of his face more while again attempting to obscure the motor vehicle recording line of sight view. (Defendant William Redman can be seen on video making a ripping and jerking hand signal motion gesture to rip the taser barb out of Stephen's face).

44. Defendants William Redman, Terry Beck and David Holcomb violated Plaintiff Stephen's Fourteenth Amendment Rights to the United States Constitution and committed federal crimes by falsifying official documents and/or reports, that are sworn and affirmed under penalties for perjury, in conspiracy to cover up the excessive force that they had used against Plaintiff Paula and Plaintiff Stephen, while they were acting under color of state law as sworn public servants. **(Had these Defendants not falsified their documents and/or reports during their conspiracy to cover up their excessive use of forces they otherwise would have committed no crimes).**

45. Defendants William Redman, Terry Beck and David Holcomb's false heroin overdose excessive force cover up story report that they made against Plaintiff Stephen to the local Michiana News Media Sources, St. Joseph County Courts and Prosecutor's Office resulted in Plaintiff Stephen being issued and excessive $5,000.00 cash bond for a minor Level 6 Felony criminal charge in violation of the Eighth Amendment to the United States Constitution.

46. The St. Joseph County Sheriff's Department Defendant and Defendant Michael Grzegorek are responsible and liable for the violent, reckless, and inadequate laser sighted Advanced Taser M26 taser gun and physical use of force training of their subordinate Defendant's William Redman, Terry Beck, David Holcomb, Kyle Lebere, Kyle Stopscyznski and Mr. Joaites excessive usages of force and criminal conspiracies to cover up their excessive usages of force; for which they maliciously, hatefully and cruelly used against Plaintiff Paula and Plaintiff Stephen and was uncalled for, while in retaliation for Plaintiff Stephen stating that Plaintiff Paula was pregnant to them after Defendant Kyle Lebere had already used excessive force against Plaintiff Paula that was hateful, cruel and uncalled; and this violated Plaintiff Paula and Plaintiff Stephens First and Eighth/Fourteenth Amendment Rights to the United States Constitution.

47. Defendants Mr. Joaites and Kyle Stopscyznski handcuffed and illegally detained Michael against his will at gunpoint in the front door step of his own property in retaliation for hand signing speech to them to stop tasering Plaintiff Stephen in order to save his life from Defendants William Redman and David Holcomb's malicious and sadistic use of excessive force that he was witnessing them hatefully and cruelly use against him and was uncalled for; and this violated Michael's First and Fourth Amendment Rights to the United States Constitution.

48. The St. Joseph County Sheriff's Department Defendant and Defendant Michael Grzegorek are responsible and liable for the inadequate training of their subordinate Defendants William Redman, Terry Beck and David Holcomb's false document and/or reports that they made against Plaintiff Stephen for a false heroin overdose to the Michiana News Media Sources, St. Joseph County Court System and Prosecutor's Office, when he did not suffer from a heroin overdose, which resulted in him being issued an excessive $5,000.00 cash bond for a minor Level 6 Felony and violated Plaintiff Stephen's Eighth Amendment Right to the United States Constitution.

49. The St. Joseph County Sheriff's Department Defendant and Defendant Michael Grzegorek are responsible and liable for the inadequate training of their subordinate Defendants Mr. Joaites and Kyle Stopsczynski handcuffing and illegally detaining Michael against his will at gunpoint in the front door step of his own property in retaliation for hand signing speech to them to stop tasering Plaintiff Stephen in order to save his life from Defendants William Redman and David Holcomb's malicious and sadistic use of excessive force that he was witnessing them hatefully and cruelly use against him and was uncalled for; and this violated Michael's First and Fourth Amendment Rights to the United States Constitution.

50. Defendants William Redman and David Holcomb retaliated against Plaintiff Stephen for his protected free speech right to tell them, "No," without fear of reprisal, as his response and denial for denying consent to a blood draw; whereby, Defendant David Holcomb choked Plaintiff Stephen when he was handcuffed to the hospital bed while under order of him to do so by Defendant William Redman for Plaintiff Stephen refusing and denying consent by saying, "No," to them; until Plaintiff Stephen was choked into submission and signed, "Forced to Sign," on the first blood draw consent form and then refused to sign the second entirely; except, they then illegally seized and searched Plaintiff Stephen's private blood property from his body against his will without his consent, court order or a warrant, or any due process of law whatsoever and without just compensation for the use of his private blood property, which violated Plaintiff Stephen's First, Fourth, Fifth and Fourteenth Amendment Rights to the United States Constitution.

51. The St. Joseph County Sheriff's Department Defendant and Defendant Michael Grzegorek are responsible and liable for the reckless, negligent and inadequate training of Defendants William Redman and David Holcomb's retaliation against Plaintiff Stephen for his protected free speech right to tell them, "No," without fear of reprisal, as his response and denial for denying consent to a blood draw; whereby, Defendant David Holcomb choked Plaintiff Stephen when he was handcuffed to the hospital bed while under order of him to do so by Defendant William Redman for Plaintiff Stephen refusing and denying consent by saying, "No," to them; until Plaintiff Stephen was choked into submission and signed, "Forced to Sign," on the first blood draw consent form and then refused to sign the second entirely; except, they then illegally seized and searched Plaintiff Stephen's private blood property from his body against his will without his consent, court order or a warrant, or any due process of law whatsoever and without just compensation for the use of his private blood property, which violated Plaintiff Stephen's First, Fourth, Fifth and Fourteenth Amendment Rights to the United States Constitution.

52. Defendants William Redman, David Holcomb, Memorial Hospital, Jason Paturalski, NMS Labs, Sheila Arnold and Indiana State Department of Toxicology illegally seized and illegally search Plaintiff Stephen's private blood property from his body against his will without his consent, court order or a warrant, and then illegally transmitted from each agency and then to the St. Joseph County Court System and Prosecutor's Office for public use without just compensation, and this violated Plaintiff Stephen's Fourth, Fifth, Eighth/Fourteenth Amendment Rights to the United States Constitution and violated his federally protected HIPPA Rights.

53. Defendant Axon Enterprise, INC. (Formerly Taser International) the laser sighted Advanced Taser M26 taser gun manufacture is deliberately indifferent to the serious risks of harm its laser sighted Advance Taser M26 taser gun's non-safe, life threatening and lethal product dangers that it poses to its victims; by wrongfully and falsely promoting the sale and use of it as safe to the St. Joseph County Sheriff's Department Defendant, Defendants Michael Grzegorek, William Redman and David Holcomb under the false pretense that it is safe, non-life threatening and non-lethal, which resulted in Plaintiff Stephen suffering a near fatal traumatic brain injury from the laser sighted Advanced Taser M26 taser gun by Axon Enterprises, INC. Promoting, endorsing, selling and then enabling the St. Joseph County Sheriff's Department Defendant and Defendant Michael Grzegorek, William Redman and David Holcomb to purchase and use its danger taser product under false pretenses that it was safe against Plaintiff Stephen in retaliation for his protected free speech right to warn them that his wife was pregnant, whereby they were able to shoot Plaintiff Stephen in the face with the laser sighted Advanced Taser M26 taser gun and cause him a near fat traumatic brain injury which resulted in permanent serious injuries and violated Plaintiff Stephen's First and Eighth/Fourteenth Amendment Rights to the United States Constitution.

54. Defendants Wiliam Redman, Terry Beck and David Holcomb were deliberately indifferent to the criminal reports for serious risk of harm that Plaintiff Stephen reported to them about the heroin dealing rapist named Don Campbell who was subjecting young women to indebted sexual servitude from heroin sales who lived on Miner Street in South Bend and needed to be stopped to prevent more young women from getting hurt, to no avail., which allowed for the atrocious rapes and indebted sexual servitude of female victim Kirsten by Don Campbell at his residence through heroin sales as the result of Defendants William Redman, Terry Beck and David Holcomb's failures to act, failures to prevent, failures to report and/or failures to prevent serious risks of harm from the criminal reports that Plaintiff Stephen made to them regarding Don Campbell prior to Plaintiff Kirsten's serious injuries; and whereby, due to their failures that resulted in her serious injuries they violated Plaintiff Kirsten's Eighth/Fourteenth Amendment Rights to the United States Constitution.

55. The St. Joseph County Sheriff's Department Defendant and Defendant Michael Grzegorek are responsible and liable for the improper and inadequate training of their subordinate Defendants William Redman, Terry Beck and David Holcomb's deliberate indifference to the criminal reports for serious risk of harm that Plaintiff Stephen reported to them about the heroin dealing rapist named Don Campbell who was subjecting young women to indebted sexual servitude from heroin sales who lived on Miner Street in South Bend and needed to be stopped to prevent more young women from getting hurt, to no avail., which allowed for the atrocious rapes and indebted sexual servitude of female victim Kirsten by Don Campbell at his residence through heroin sales as the result of Defendants William Redman, Terry Beck and David Holcomb's failures to act, failures to prevent, failures to report and/or failures to prevent serious risks of harm from the criminal reports that Plaintiff Stephen made to them regarding Don Campbell prior to Plaintiff Kirsten's serious injuries; and whereby, due to their failures that resulted in her serious injuries they violated Plaintiff Kirsten's Eighth/Fourteenth Amendment Rights to the United States Constitution.

56. The Plaintiffs have no plain, adequate or complete remedy at law to redress the wrongs described herein. Plaintiffs have been and will continue to be irreparably injured by the conduct of the Defendants unless this Court grants the declaratory and injunctive relief which the Plaintiffs seek.

## IV. PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully pray that this Court enter judgement granting Plaintiffs:

57. A declaration that the acts and omissions described herein violated Plaintiffs rights under the Constitution and laws of the State of Indiana and Constitution and laws of the United States.

58. A preliminary and permanent injunction ordering:

(1). The St. Joseph County Sheriff's Department Defendant and Defendants Michael Grzegorek, William Redman, Terry Beck and David Holcomb to cease and desist all further use of the laser sighted Advance Taser M26 taser gun;

(2). Defendant Axon Enterprises, INC. Cease and desist all sales of, and recall all, laser sighted Advance Taser M26 taser guns;

(3). For the St. Joseph County Sheriff's Department Defendant and its Sheriff's Deputy Employess to be issued and then wear police body cams offered free to law enforcement by Axon Enterprises, INC.; and

(4). A personal protection order for Plaintiffs against Defendants William Redman, Terry Beck, David Holcomb, Kyle Lebere, Kyle Stopscyznski and Mr. Joaites.

59. Civil Rights Crimes Prosecution.

60. Compensatory Damages, for each Plaintiff individually, against each Defendant, jointly and severally.

61. Punitive Damages, for each Plaintiff individually, against each Defendant.

62. A Jury Trial on all issues triable by jury and/or Jury Demand.

63. Plaintiff's costs in this suit.

64. Any additional relief this Court deems just, proper and equitable.

RESPECTFULLY SUBMITTED,

*[signature]*
Stephen E. Taghon Jr. (Plaintiff)
19630 Dubois Avenue
South Bend, IN 46637
(574)272-1139
stagjr@outlook.com

## AFFIRMATION

The undersigned swears and affirms under penalty of perjury that the foregoing Civil Rights Complaint is true and correct to the best of his knowledge and/or belief.

DATE: June 20, 2018

*[signature]*
Stephen E. Taghon Jr. (Plaintiff)
19630 Dubois Avenue
South Bend, IN 46637
(574)272-1139
stagjr@outlook.com